FILED
2017 Dec-15 PM 12:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| TERRIE JOHNSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) 2:16-cv-00961-AKK |
| CITY OF BIRMINGHAM, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Terrie Johnson alleges that a fellow Birmingham Police Department ("BPD") officer subjected her to a sexually hostile work environment. Doc. 1. She filed this lawsuit, alleging that her former employer, the City of Birmingham, knew or should have known of the abuse and failed to take prompt remedial action and then retaliated against her for complaining of the alleged harassment. Doc. 1. The City filed a motion for summary judgment, which is fully briefed and ripe for consideration. Docs. 26; 27; 29. After reading the briefs, viewing the evidence, and considering the relevant law, the court grants the motion.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v.*

*Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND

Between 1994 and 2015, Johnson worked as a police officer for the BPD's West Precinct, where she alleges a fellow officer sexually harassed her. Docs. 1 at 2; 27 at 3; 29 at 3. Specifically, she alleges that Officer Isaac Ephraim waited for her by her car after work, repeatedly asked her out on dates, which she rebuffed, and, in response, began a campaign of harassment against her.[1] Docs. 1 at 2; 27-1 at 19-20.

Johnson's first allegation of misconduct by Ephraim is that, "when sitting next to [her] at roll call, Ephraim put his hand on her thigh," and, after she removed his hand, "he responded that he knew she liked it and put his hand on her thigh again." Doc. 1 at 2. Next, on September 5, 2014, while Johnson was working at a computer at the station, Ephraim purportedly walked over and "swung

---

[1] Johnson alleges also in her brief that one of her supervisors, Captain James Blanton, propositioned her for sex and texted her a picture of his penis. Doc. 29 at 2. Johnson did not include this allegation in the complaint she filed in this case, focusing instead solely on Ephraim. *See* doc. 1. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). To the extent Johnson intended to raise claims based on Captain Blanton's conduct, she should have included those allegations in her complaint. More importantly, when Johnson complained about Captain Blanton, the BPD responded effectively by promptly transferring him to a different precinct. Doc. 27-1 at 12.

3

his hand towards [her] and came close to hitting [her]." Docs. 27-1 at 6; 29 at 4. Ephraim disputes this, alleging that, because Johnson had used the computer for almost two hours, he said to her "girl, get off the computer and let someone else on," which made Johnson irate. Doc. 27-3 at 2. Either way, Johnson and Ephraim began loudly arguing and using profanity, causing a disruption at the precinct. Docs. 27 at 4; 27-1 at 6; 27-3 at 2; 29 at 4. Ephraim later admitted that during the confrontation he told Johnson that she was "talking like a man" and that "shit happens when you talk like a man." Doc. 27-3 at 2. Johnson filed a complaint with BPD's Internal Affairs Department ("IAD") against Ephraim a few days later, in which she complained that Ephraim swung his fist towards her face as if he was about to strike her. Docs. 27 at 4; 27-1 at 6; 27-3 at 2; 29 at 4.

On November 14, 2015, Johnson filed a second IAD complaint against Ephraim, citing two separate incidents. Doc. 27 at 4-5. First, she alleged that Ephraim drove past her one day and said "nice car," which she interpreted as a retaliatory act in response to her first IAD complaint. Doc. 27-1 at 6. Johnson also complained that Ephraim had appeared at one of her assigned calls, even though the dispatcher did not send him there, and began "blowing towards her thigh." Docs. 1 at 3; 27-1 at 6. When the BPD subsequently investigated Johnson's complaint, Ephraim claimed that he answered the call to provide back up for Johnson because the dispatcher stated that the "subjects had guns and knives and

4

were fighting in the street."  Doc. 27-3 at 2.  Ephraim added that he blew on Johnson's legs to scare off a bee that was hovering near her.  Docs. 1 at 3; 27 at 4-5; 27-3 at 4.

As further examples of alleged harassment, Johnson alleges that, around this same time, she overheard Ephraim referring to female officers as "bitches."  Doc. 27-1 at 5-6.  On another occasion, Ephraim purportedly explained to Johnson that the "come two times" phrase written on his vehicle's tag referred to his ability to pleasure women and that he could do the same for her.  Doc. 27-1 at 14.

Johnson filed a third IAD complaint against Ephraim on March 9, 2015,[2] in which she alleged that Ephraim forcefully and intentionally "bumped into her," knocking her off balance, and that he had done the same on two prior occasions.  Docs. 27 at 5; 29 at 4.  She testified in her deposition in this case that this incident angered her to the point that she telephoned the IAD agent in charge of investigating her complaints, Sergeant David Rockett, to complain about Ephraim.  Doc. 27-1 at 11.  However, Rockett "wasn't aware that [the prior complaints] had been assigned to [him]," and, as a result, "the file was inadvertently placed in a file room on the shelf with closed cases."  Doc. 27-3 at 3.  At some point after the third

---

[2] Perhaps because of IAD's delay in investigating her first two complaints, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission on February 27, 2015, in which she alleges, in part, that she complained to IAD "on multiple occasions, but the behavior continued, and it does not appear that [BPD] took any responsive action."  Doc. 27-1 at 38.

IAD complaint, the BPD began investigating Johnson's complaints and transferred Ephraim to another precinct. Doc. 27-1 at 16, 19.

On July 1, 2015, the BPD served Johnson with a Notice of Determination Hearing, informing her that the BPD was considering disciplining her for the argument that occurred on September 5, 2014. *Id.* at 42-43. After granting Johnson's request for a continuance, the BPD served Johnson with a second Notice of Determination Hearing a month later, which included a new allegation that "on an undisclosed date two or more years ago, [Johnson] commented to Officer Ephraim about his penis and tried to reach into his pants." *Id.* at 43. Johnson requested another continuance. *Id.*

BPD finally held the hearing on September 1, 2015, during which Chief A.C. Roper heard testimony from various officers. *Id.* at 40, 45. Johnson chose not to attend the hearing and submitted a written statement instead, in which she denied the allegations against her and asserted her belief that the BPD convened the hearing to retaliate against her for complaining of Ephraim's alleged harassment. *Id.* at 42-43. After hearing the evidence, Chief Roper gave Johnson and Ephraim a "letter of reprimand" and required that they attend remedial training on the Workplace Harassment Policy, as both admitted to using profanity and causing a disruption at work. *Id.* at 45; doc. 27-3 at 3. Chief Roper also suspended Johnson for three days because of the allegation that she commented on and tried

to grab Ephraim's penis. Docs. 27-1 at 45; 27-3 at 3. Chief Roper based this decision on the statements of two witnesses who each corroborated Ephraim's account: Officer Erika Lofton, Ephraim's partner, and Sergeant Pier Walker. Doc. 27-3 at 2-4.

Johnson appealed Chief Roper's decision to the City's Human Resources Department. Doc. 27-1 at 39. Shortly after filing her appeal, however, Johnson retired from the BPD and accepted another job. Docs. 27 at 3; 29 at 1. As a result, Johnson never actually served the suspension. Docs. 27 at 6; 27-1 at 67.

Despite Johnson's retirement, the City's Director of Human Resources, Peggy Washington-Polk, heard the appeal and ultimately recommended that the mayor uphold the suspension. Doc. 27-3 at 1-4. Director Washington-Polk, like Chief Roper, was persuaded by the testimony of Officer Lofton and Sergeant Walker. *Id.* at 3. At the appeal hearing, Officer Lofton testified that she saw Johnson "reaching for Ephraim's zipper" and saying "come on let's go" and that she failed to report the incident because she "didn't want to get involved" and "didn't want to get [Johnson] in trouble." *Id.* at 2. Sergeant Walker similarly testified that she heard Johnson say to Ephraim "I heard what you working with" and then reach for his pants. *Id.* at 2-3. Sergeant Walker claims she told Johnson and Ephraim to "get out of here with that," but did not discipline them because "[n]either of them complained, so [she] thought [she] had done enough by stopping

them and telling them to leave." *Id.* at 3. After the appeal, BPD suspended Sergeant Walker without pay for failing to report the incident. *Id.* at 3-4.

In her recommendation to the mayor, Director Washington-Polk wrote that she found Sergeant Walker credible because she "would [not] have agreed to take punishment [i.e. the suspension] for something that didn't happen." *Id.* at 3. In contrast, Director Washington-Polk challenged Ephraim's credibility, noting that "[i]t is irrational at best to assume that it was necessary for Officer Ephraim to swat at a yellow jacket and bend his face close enough to the bee to blow it away from Officer Johnson's pants without risk of harm to himself. Swatting at the bee should have been sufficient." *Id.* Finally, Director Washington-Polk based her recommendation to sustain Johnson's suspension, in part, on the fact that Johnson was "gainfully employed with [another] Police Department," reasoning that the suspension "ha[d] not affected her ability to seek employment." *Id.* at 3-4. The Mayor accepted the recommendation and upheld the suspension. *Id.* at 4. Johnson filed this lawsuit, alleging claims for a hostile work environment and for retaliation. Doc. 1.

### III. ANALYSIS

Title VII of the Civil Rights Act of 1964 makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e-2. To establish a *prima facie* claim of sexual harassment under Title VII, an employee must prove that (1) she belongs to a protected group; (2) she has been subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable exists. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006).

Title VII also has a retaliation provision, creating a cause of action for employees who are discriminated against for "opposing any practice" that they have a good faith belief to be unlawful. 42 U.S.C. § 2000e-3; *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). To establish a *prima facie* case of retaliation, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that the adverse employment action would not occurred but for the protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Once the plaintiff establishes a *prima facie* case, "the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action," and if the employer does so, "the plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation." *Meeks*, 15 F.3d at 1021.

## A. Johnson's Hostile Work Environment Claim

The City does not dispute that Johnson was subjected to unwelcome harassment based on her sex. Rather, the City argues that Johnson's allegations "fall[] far short of demonstrating the requisite severity or pervasiveness required," and that, alternatively, it is not liable because it responded effectively by transferring Ephraim to another precinct. Doc. 16 at 13-16.

### 1. Whether the alleged harassment was severe or pervasive

The "severe or pervasive" element is the one that "tests the mettle of most sexual harassment claims." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). The Supreme Court created the test to "ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The harassment must be both *objectively* severe or pervasive to a reasonable person and *subjectively* severe or pervasive to the plaintiff. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). While there is "no mathematically precise test," the objective component of this analysis generally requires courts to consider several factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive

utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* Though all of these factors should be taken into account, "no single factor is required." *Id.*

The "severe or pervasive" test is particularly rigorous in this circuit. For example, where a female employee's male supervisor harassed her over a period of sixteen months—including rubbing his hip against hers while touching her shoulder and smiling, making a "sniffing sound" while looking at her groin area on multiple occasions, and "constant[ly] following" her while staring at her—the court held that the conduct fell "well short" of altering the terms and conditions of her employment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999).

Based on the record here, Johnson cannot establish that Ephraim subjected her to objectively severe or pervasive harassment. *See id.* Johnson alleges that, among other things, Ephraim (1) once put his hand on her thigh without her consent and, after she removed his hand, he responded that he knew she liked it and put his hand on her thigh again; (2) swung at her as if to punch her and told her "shit happens when you talk like a man"; (3) told her when he drove past that she had a "nice car"; (4) showed up at one of her calls and blew on her thigh; (5) referred to female coworkers as "bitches" on one occasion; (6) told her on one occasion that he could make her sexually "come two times"; and (7) intentionally and forcefully bumped into her and knocked her off balance on at least three

occasions.  *See* Part II, *supra*.  Some of these allegations—i.e. saying "nice car" and threatening to fight Johnson—are not sexual in nature or gender-related and should not factor into the court's analysis.  *See Gupta*, 212 F.3d at 583 ("[S]tatements and conduct must be of a sexual or gender-related nature—sexual advances, requests for sexual favors, or conduct of a sexual nature—before they are considered in determining whether the severe or pervasive requirement is met.  Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted.").  Still even considering all the allegations, at best, Johnson has presented "offhand comments, and isolated incidents," not "extremely serious" harassment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

While inappropriate and certainly not the sort of behavior that employers should tolerate in a work place, these nine incidents over a two-year period are not severe or pervasive enough to rise to the level of a hostile work environment under the law.  *See Harris*, 510 U.S. at 23.  Critically, Johnson failed to direct the court to any evidence in the record where Johnson alleges that these incidents rose to the level of "unreasonabl[e] interfere[nce]" with her work performance.  *See Mendoza*, 195 F.3d at 1248.  Therefore, her hostile environment claim fails.

### 2. Whether the City knew of the harassment

Alternatively, the claim fails because Johnson failed to utilize the City's complaint procedure. According to Johnson, she reported Ephraim's alleged harassment on three different occasions to IAD. The problem with this contention, however, is that IAD is not one of the entities designated by the City to receive sexual harassment complaints. *See* doc. 27-1 at 48-53. Under the City's Gender Harassment Policy,[3] employees are directed to first "[r]eport incidents of sexual harassment to your supervisor, your supervisor's superior, or the City's Personnel Department," or to utilize the "grievance and complaint procedures of the Rules and Regulations of the Jefferson County Personnel Board." Doc. 27-1 at 50-51.

An employer cannot be charged with constructive knowledge where it "developed and promulgated an effective and comprehensive sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy." *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997); *see also Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1260 (11th Cir. 2003). Rather, "[t]he sole inquiry when the employer has a clear and published policy is whether the complaining employee followed the procedures established in the

---

[3] Johnson signed an acknowledgement form confirming that she received the policy. Doc. 27-1 at 46.

company's policy." *Breda v. Wolf Camera & Video*, 222 F.3d 886, 890 (11th Cir. 2000). As the Eleventh Circuit has held:

> In applying the *Faragher* [*v. City of Boca Raton*, 524 U.S. 775 (1998)] affirmative defense, we have noted that the employer's notice of the harassment is of paramount importance [because] if the employer had notice of the harassment . . . then it is liable unless it took prompt corrective action. . . . This inquiry is facilitated by the identification of the appropriate Company representative to whom employees should register their complaints in the [employer's] sexual harassment policy. . . . [W]hen an employer's sexual harassment policy clearly specifies the steps an employee should take to alert the employer of sexual harassment, the employer has, by the policy, itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures. . . . [O]nce an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances. . . . Therefore, we conclude that [the employer] cannot be considered to have been placed on notice of [the] harassing behavior by the plaintiffs' informal complaints to individuals not designated by [the employer] to receive or process sexual harassment complaints.

*Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300 (11th Cir. 2000).

Based on this precedent, Johnson's failure to utilize the complaint mechanism outlined in the City's policy precludes this court from finding that the City failed to timely respond to her complaints. On this record, Johnson unreasonably failed to take advantage of the City's complaint procedure, and no basis exists to find that the City had notice of the alleged harassment. *See id*. at 1300; *Farley*, 115 F.3d at 1554.

Moreover, even considering the IAD complaints, the City cannot be held liable because Johnson's first two complaints were too vague to put the City on notice of serious harassment, and the City took prompt remedial action by transferring Ephraim once it became aware of the severity of the allegations. As Johnson describes it, her first two complaints include the following allegations: (1) Ephraim "swung his hand towards [Johnson] and came close to hitting [her]" and told Johnson that she was "talking like a man" and that "shit happens when you talk like a man"; (2) Ephraim drove past her one day and said "nice car"; and (3) Ephraim appeared at one of her calls and began "blowing towards her thigh." Docs. 1 at 3; 27-1 at 6; 29 at 4; 27-3 at 2. These allegations are insufficient to put the City on notice of a hostile work environment. *See Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999) (a complaint defining the problem as a "personal" matter and failing to mention the alleged harassment insufficient to place employer on notice); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) (an employee's "generalized comment" to a manager that one of his coworker's "needs to watch what he says to me" did "not constitute actual notice" to employer); *Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1310 (11th Cir. 2007) (complaint of "a persistent but non-threatening suitor" was insufficient to put employer on notice of harassment).

Furthermore, once the IAD had actual notice of the existence of a serious problem through Johnson's third complaint, in which she alleged Ephraim bumped into her forcefully, the BPD immediately investigated and transferred Ephraim to another precinct. Docs. 27 at 5; 27-1 at 11, 16, 19; 29 at 4. Accordingly, based on the record, the City promptly took remedial action, and is therefore not liable for the alleged harassment. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258 (11th Cir. 2014); *Madray*, 208 F.3d at 1302; *Coates*, 164 F.3d at 1366 ("[The employer's] action in response to [the plaintiff's] complaint was anything but prompt and effective.").

To summarize, summary judgment is due because the allegations fail to rise to the necessary severe or pervasive level. Alternatively, Johnson failed to utilize the City's anti-harassment complaint mechanism, and the City promptly responded once it received a complaint that placed it on notice of the severity of the conduct.

**B. Johnson's Retaliation Claim**

The City next contends that Johnson cannot prove a retaliation claim, offering two primary arguments in support: (1) that Johnson did not suffer an adverse employment action because she voluntarily retired before serving her suspension; and (2) that Johnson cannot show a causal link between her suspension and her protected activity. Doc. 27 at 3. While the City is correct that Johnson never served her suspension, an "adverse employment action" is any action that, if

taken, "might dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Relevant here, because the suspension remains in Johnson's file and would negatively impact her if she sought re-employment with the City, doc. 27-3 at 3-4, a reasonable worker might well have been "dissuaded" from filing the charge. *See Burlington*, 548 U.S. at 68. Therefore, the court finds that the suspension qualifies as an adverse employment action.

Johnson's retaliation claim fails, however, because she cannot show that her IAD complaints and her EEOC charge were the but-for cause for her suspension. *See Nassar*, 133 S. Ct. at 2533. In general, a plaintiff can prove causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal quotations omitted). From a close temporal proximity perspective, the best case scenario for Johnson is February, 2015 when Johnson filed her EEOC complaint or March, 2015 when she filed her third IAD complaint. Setting aside whether the IAD complaint is protected activity, given that, as Johnson described it, it did not mention any alleged discrimination or harassment,[4] at best, between three to four months had passed between her

---

[4] *See Thaxton-Brooks v. Baker*, 647 F. App'x 996, 1000 (11th Cir. 2016) (vague comments "about ethical violations and questionable hiring practices . . . do not constitute protected activities because they do not relate to racial discrimination or retaliation").

17

protected activity and when BPD issued the initial Notice of Determination Hearing in July, 2015, and five to six months had passed between her protected activity and the suspension. Doc. 27-1 at 42. A gap of three to six months, standing alone, is too long to establish causation. *See Thomas*, 506 F.3d at 1364 (holding that a three month delay, standing alone, was insufficient to create a reasonable inference of causation). Therefore, Johnson must point to "other evidence tending to show causation" to prevail. *Id.*

After closely examining the record, there is no other evidence tending to show any causal link between Johnson's protected activity and the suspension. A plaintiff can prove causation through "sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse action." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003). As the City correctly notes, Johnson has not pointed to any evidence "that the investigators who investigated her allegations were even aware that she filed an EEOC charge." Docs. 27 at 22; 29 at 5-6. While Chief Roper presumably knew about Johnson's IAD complaints, he disciplined both Johnson and Ephraim for their shouting match on September 5, 2014. Docs. 27-1 at 45; 27-3 at 3. As for his separate decision to suspend Johnson, that was based on corroborated reports that Johnson purportedly tried to touch Ephraim's penis, and Johnson has not presented any evidence to

show that retaliatory animus factored into the decision. Based on this record, Johnson has failed to establish that the City would not have suspended her but for her IAD complaints and EEOC charge. *See Nassar*, 133 S. Ct. at 253; *Thomas*, 506 F.3d at 1364.

Finally, the retaliation claim also fails because Johnson failed to rebut the City's articulated reason for her suspension, namely the alleged incident where she attempted to grab Ephraim's penis. Doc. 27-1 at 43. Johnson claims—without evidence—that Officer Lofton and Sergeant Walker fabricated the charge because of their friendship with Ephraim. Doc. 29 at 3. But there was no evidence before Chief Roper to question the veracity of these witnesses. As for Director Washington-Polk, who handled Johnson's appeal, she added that she found Sergeant Walker credible, in part, because Walker's report resulted in Walker being suspended for failing to take action when she witnessed Johnson's conduct. Doc. 27-3 at 3. Ultimately, Johnson's contention that these two witnesses made up the allegation because they are "friends" of Ephraim, doc. 29 at 3, is speculative at best and does not establish that Chief Roper and Director Washington-Polk acted unreasonably when they opted to believe these witnesses. As the circuit aptly put it in another case in which the accused also challenged the veracity of the allegations against him:

> We can assume for purposes of this opinion that the complaining employees . . . were lying through their teeth. The inquiry of the

> ADEA is limited to whether [the employer] *believed* that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge. Elrod has offered no evidence to show that Sears' justification is unworthy of credence.

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Because Chief Roper and Director Washington-Polk had a reasonable basis to believe these witnesses, and Johnson has provided no evidence that the City's proffered reason for Johnson's suspension is pretextual, her retaliation claim is due to be denied. *See Nassar*, 133 S. Ct. at 253 (insufficient to show that the protected activity was a motivating factor for the adverse employment action to prove a retaliation claim); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (plaintiffs have the burden to prove pretext).

## **CONCLUSION**

Consistent with this opinion, the City's Motion for Summary Judgment, doc. 26, is due to be granted. A separate order will be entered.

**DONE** the 15th day of December, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE